IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JONATHAN LAUZON, et al., § | |
| § | |
| *Plaintiffs*, § | |
| § | |
| v. § | Civil Action No.  SA-12-CV-177-XR |
| § | |
| PULTE HOMES, INC., PULTE HOMES OF § | |
| TEXAS, L.P., and CENTEX HOMES, INC., § | |
| § | |
| *Defendants*. § | |

**ORDER**

On this date the Court considered Defendant Centex's Motion to Compel Arbitration (Doc. No. 3) and the parties' briefs in support and opposition thereof. For the following reasons, the Court GRANTS the motion.

**I. Background**

**A. Factual Background**

Plaintiffs in this case are owners of homes in the Hills of Rivermist residential subdivision in Bexar County, Texas. Defendants Pulte Homes of Texas, L.P. ("Pulte Homes"), and Centex Homes, Inc. ("Centex"), are the developers of the subdivision and are wholly owned subsidiaries of Pulte Group, Inc. (formerly known as Pulte Homes, Inc.).[1] On January 24, 2010, a retaining wall in the subdivision collapsed and a landslide ensued. Plaintiffs allege that the failure of the retaining wall put their homes in "great danger of physical damage" and diminished the value of their properties "tremendously." (Pls.' Orig. Pet. 4, Doc. No. 1, Ex. A).

---

[1] Pulte Homes, Inc., was originally a defendant in this case but was dismissed on June 18, 2012, for lack of personal jurisdiction. (Doc. No. 16).

**B. Procedural Background**

Plaintiffs brought suit against Defendants in state court alleging negligence, negligence per se, gross negligence, nuisance, fraud in real estate transaction, fraud, deceptive trade practices, breach of contract, and breach of implied warranty. Centex timely removed the case to this Court on February 24, 2012, based on diversity jurisdiction. On March 13, 2012, Centex filed this motion to compel arbitration, alleging that Plaintiffs all agreed to submit disputes to binding arbitration when they bought their homes from Centex and signed New Home Sale Agreements that contain arbitration clauses. (Def.'s Mot. Compel Arb. 2, Doc. No. 3). Plaintiffs concede that the contracts contain arbitration clauses but argue that the arbitration agreements are not enforceable because not all Plaintiffs bought homes directly from Centex and, moreover, because Centex has waived its right to arbitration. (Pls.' Resp. 2, Doc. No. 8).

## II. Legal Standard for Ruling on a Motion to Compel Arbitration

The Federal Arbitration Act (FAA) requires courts to enforce arbitration agreements. 9 U.S.C. § 2. "There is a two-step inquiry to determine whether a party should be compelled to arbitrate." *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007). First, the court must "ascertain whether the parties agreed to arbitrate the dispute." *Id.* If the court finds that the parties agreed to arbitrate, it must then determine if "any federal statute or policy renders the claims nonarbitrable." *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (quoting *JP Morgan Chase & Co.*, 492 F.3d at 598).

Since neither party in this case suggests that any federal statute or policy renders the claims nonarbitrable, the Court will limit its analysis to the first inquiry.

## III. Analysis

**A. Did the Parties Agree to Arbitrate?**

In determining whether the parties agreed to arbitrate, the court must conduct two inquiries: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *JP Morgan Chase & Co.*, 492 F.3d at 598 (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). "Generally, principles of state contract law govern the question of whether the parties formed a valid agreement to arbitrate." *Id.*; *see also Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) ("[I]n determining whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement.").

**1. Are there Valid Arbitration Agreements?**

It is undisputed that nine out of the ten homes owned by Plaintiffs were purchased directly from Centex and are subject to arbitration clauses. (*See* Pls.' Resp. ¶¶ 2-3, Doc. No. 8). Nonetheless, Plaintiffs' counsel argues that the arbitration agreements are unenforceable for two reasons. First, Plaintiffs' counsel contends that one homeowner, Clarice Yamamoto, did not purchase the home directly from Centex and thus is not bound by an arbitration agreement. Second, counsel contends that Centex waived its right to enforce all of the arbitration agreements it entered into with Plaintiffs. The Court considers each argument in turn.

    **a. Did Plaintiff Yamamoto Enter into a Contract with Centex that Contains an Arbitration Clause?**

"[T]he FAA does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d. 488 (1989). "Who is actually bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement." *Sherer*, 548 F.3d at 381 (quoting *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 355 (5th Cir. 2003)). As held by the Texas Supreme Court, "arbitration is simply a matter of contract between the parties," and Texas law ensures that "men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced." *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 87, 95-96 (Tex. 2011) (citations omitted).

Plaintiff Yamamoto argues that she is not bound by the arbitration clause because she did not purchase a home directly from Centex. (Pls.' Resp. ¶ 2, Doc. No. 8). Although she offers no further elaboration, the Court infers that since she, allegedly, did not purchase a home from Centex, she therefore contends that she never entered into an agreement with Centex to be bound by arbitration.

However, as Centex points out, the record before the Court contains a "New Home Sale Agreement" between Yamamoto and Centex. (Doc. No. 1, Ex. E1-3). The agreement contains an arbitration clause that is nearly identical to the arbitration clauses in the other Plaintiffs' contracts. Importantly, the arbitration clause in Yamamoto's contract with Centex provides that all disputes between Yamamoto and Centex will be resolved by binding arbitration. Yamamoto's handwritten initials appear at the bottom of the page that contains the arbitration clause. Additionally, signatures of both Yamamoto and a representative of Centex

appear at the end of the contract. Consequently, there is sufficient evidence on the record for the Court to find that Yamamoto and Centex entered into a contract that contains an arbitration clause.

Yamamoto has not offered any evidence demonstrating that she did not validly enter into the contract. For example, she has not shown, or even suggested, that she was incompetent, that she was forced to enter the contract involuntarily, or that her signature was forged. Therefore, in light of the uncontradicted evidence on the record, the Court finds that Plaintiff Yamamoto has validly entered into a contract with Centex that contains an arbitration clause, as have the other Plaintiffs.

### b. Has Centex Waived its Right to Enforce the Arbitration Agreements?

Having determined that all Plaintiffs entered into arbitration agreements with Centex, the Court must now address Plaintiffs' second argument and determine if the arbitration agreements have been waived.

Plaintiffs argue that Centex has waived its right to arbitration in two ways. First, Plaintiffs allege that Centex waived its right to rely on the arbitration agreements by filing a lawsuit in federal court against Arias & Associates, Inc. ("Arias"), and Gravity Walls, Ltd. ("Gravity Walls"), two companies involved in designing and constructing the retaining wall that collapsed, despite having entered into contracts with the two companies that contain arbitration clauses "similar" to the clauses at issue in this case. (*See* Pls.' Resp. ¶ 5, Doc. No. 8). Second, Plaintiffs argue that Centex waived its right to arbitration by publicly advising residents that the arbitration agreements with Centex could be avoided by filing a lawsuit

against Arias and Gravity Walls. *Id.* ¶ 6. As explained herein, the Court finds both arguments unpersuasive.

### *i. Legal Standard for Waiver*

"Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *In re Mirant Corp.*, 613 F.3d 584, 588 (5th Cir. 2010). "A party generally invokes the judicial process by initially pursuing litigation of claims then reversing course and attempting to arbitrate those claims." *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009). "To invoke the judicial process, a 'party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'" *In re Mirant Corp.*, 613 F.3d at 589 (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999)). The question of whether a party has waived its right to arbitration "depends on the facts of each case." *Id.* (quoting *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985)).

The Texas Supreme Court has recognized the same standards for evaluating waiver as the Fifth Circuit. *See Perry Homes v. Cull*, 258 S.W.3d 580, 589-91 (Tex. 2008) (holding that a party "waives an arbitration clause by substantially invoking the judicial process to the other party's detriment or prejudice" and that waiver must be decided on a "case-by-case basis"). Under Texas law, the burden of proving that an arbitration clause is unenforceable "falls on the party opposing the contract." *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008).

### *ii. Analysis*

Centex filed this motion to compel arbitration on March 13, 2012, just several weeks after it removed the case to federal court. Once the case was removed to federal court, Centex

did not file any motions or pleadings before it filed its motion to compel arbitration.[2] To this date, Centex has still not filed a motion to dismiss or a motion for summary judgment, nor has Centex engaged in discovery. To the contrary, Centex has attempted to "prevent the expenditure of unnecessary time and expense" by filing a motion to stay the case until the Court rules on this motion to compel arbitration. (Mot. Stay Disc. 3, Doc. No. 15). Moreover, Centex has consistently maintained its position that it intends to resolve the dispute with Plaintiffs through arbitration rather than through litigation in federal court. (*See* Agreed Mot. Stay Disc. 1, Doc. No. 17; Resp. Pls.' Mot. Leave 6 n.2, Doc. No. 20). Therefore, the Court finds that Centex has not invoked the judicial system to the detriment of Plaintiffs, and thus has not waived its right to compel arbitration.

The Court overrules Plaintiffs' argument that Centex waived its right to compel arbitration by filing suit against Arias and Gravity Walls in federal court rather than by resolving its claims against them through arbitration. Both Fifth Circuit and Texas case law are clear that, to waive one's right to arbitration, a party must invoke the judicial process to the detriment *of the other party*. Plaintiffs were not parties to the other lawsuit. Therefore, Centex never invoked the judicial process against them. The Court cannot find, no matter how similar the arbitration clauses are to the ones at issue here, that Centex waived its right to arbitrate this dispute with Plaintiffs because of Centex's decision to assert claims in federal court against different parties, in a different case, concerning different contracts.

Likewise, the Court does not find that Centex waived its right to arbitration by, as Plaintiffs contend, "tak[ing] the very public position that anyone with a complaint about the

---

[2] The only filing, other than its notice of removal and corresponding attachments, that Centex submitted to this Court before filing its motion to compel arbitration was a notice to correct the title of the Pulte Homes employee who had signed a declaration in support of removal. (Doc. No. 2).

wall collapse can file suit against [Arias and Gravity Walls] and avoid the arbitration clause with Centex." (Pls.' Resp. ¶ 6, Doc. No. 8). Plaintiffs argue that the following statement constitutes waiver:

> In regards [sic] to the binding arbitration:
>
> Binding arbitration is included in the sales agreement and signed by both the buyer and the builder as a means to help facilitate a resolution much faster than within the judicial system. Should a resident want to pursue additional legal action, the binding arbitration language contained within our agreements does not prevent the homeowner from pursuing a lawsuit in a San Antonio court against another party, including a contractor.

(Pls.' Resp., Doc. No. 8, Ex. 1). Nothing in this statement suggests that Centex waived its arbitration agreements with Plaintiffs. On the contrary, the plain language of the statement emphasizes that residents who signed the New Home Sale Agreements *are* bound by arbitration agreements if they pursue claims against Centex because, as the statement points out, the sale agreements include binding arbitration clauses. Nor does the Court find that Centex's statement somehow encourages residents to "avoid" the arbitration agreements with Centex by bringing claims against third parties. Rather, the statement merely apprises residents of their legal right to pursue *additional* litigation against third parties in a forum of the residents' choice. Consequently, the Court finds that Centex has not waived its right to arbitration by issuing this statement.

**2. Do Plaintiffs' Claims Against Centex Fall within the Scope of the Arbitration Agreements?**

When addressing whether or not a question falls within an arbitration agreement's scope, courts apply the "federal policy favoring arbitration." *Sherer*, 548 F.3d at 381. "[D]ue regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope

of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Scis*, 489 U.S. at 479, 109 S. Ct. 1248.

The arbitration clauses at issue in this case are very broad. They purport to cover "all disputes" between Centex and the homeowner. (*See* Doc. No. 1, Exs. E1-1-3). The only apparent limitation on the scope of the arbitration agreements is an exception allowing minor disputes to be resolved in small claims court. *Id.* Since Plaintiffs seek to recover the market value of their homes, the small claims exception is clearly inapplicable to this case. Furthermore, neither party contends that any of Plaintiffs' claims against Centex fall outside the scope of the arbitration agreements. Therefore, given the broad scope of the arbitration clauses and the federal policy favoring arbitration, the Court finds that all of Plaintiffs' claims against Centex fall with the scope of the arbitration agreements.

## IV. Dismissal or Stay?

Upon finding arbitrable issues in a case, the Fifth Circuit has held that district courts have discretion to either dismiss the case or stay the case. *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999). Dismissal may be appropriate "when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis in original). Dismissal is within the district court's discretion if the "post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law." *Id.* (citation omitted). The Fifth Circuit "encourages" district courts to dismiss cases in instances where "staying the action serves no purpose." *Armstrong v. Assocs. Intern. Holdings Corp.*,

242 F. App'x 955, 959 (5th Cir. 2007) (unpublished per curiam opinion) (quoting *Alford*, 975 F.2d at 1164)).  An entry of a stay, on the other hand, may be appropriate when "the district court perceives that it might have more to do than execute the judgment once arbitration has been completed." *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 309 (5th Cir. 2003) (citation omitted). Likewise, the Fifth Circuit has interpreted the language of 9 U.S.C. § 3 to mean that "the district court cannot deny a stay when one is properly requested." *Fedmet Corp.*, 194 F.3d at 678.

Neither party has indicated a preference as to whether they would prefer, in the event that the Court compels arbitration, the Court to stay or dismiss Plaintiffs' case against Centex. Nor has either party filed a motion to stay the case in the event that the Court grants the motion to compel arbitration. The Court therefore has the discretion to employ either mechanism. As discussed *supra*, the Court finds that all of Plaintiffs' claims against Centex are covered by the arbitration agreements. Therefore, all of Plaintiffs' claims against Centex are arbitrable and, once arbitration is complete, this Court will have nothing more to do other than conduct a limited judicial review and execute final judgment. While this Court will maintain jurisdiction over Plaintiffs' claims against Pulte Homes, the Court finds that maintaining jurisdiction over Plaintiffs' claims against Centex would serve no purpose. Accordingly, the Court finds that it is appropriate to dismiss Plaintiffs' claims against Centex without prejudice.

## V. Conclusion

In light of the foregoing analysis, the Court finds that Plaintiffs all entered into binding arbitration agreements with Centex and that Centex has not waived its right to arbitration. The

Court also finds that all of Plaintiffs' claims fall within the scope of the arbitration agreements. Accordingly, Defendant Centex's Motion to Compel Arbitration (Doc. No. 3) is GRANTED. Plaintiffs' claims against Centex are DISMISSED without prejudice.

    It is so ORDERED.

    SIGNED this 24th day of September, 2012.

                                  XAVIER RODRIGUEZ
                                  UNITED STATES DISTRICT JUDGE