IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JONATHAN LAUZON, et al., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No.  SA-12-CV-177-XR |
| PULTE HOMES, INC., PULTE HOMES OF TEXAS, L.P., and CENTEX HOMES, INC., | § § § § | |
| *Defendants*. | § § | |

## ORDER

On this day the Court considered Plaintiffs' motion for leave to file their first amended complaint (Doc. No. 18). After careful consideration, the Court DENIES the motion.

### I. Background

Plaintiffs in this case are owners of homes in the Hills of Rivermist residential subdivision in Bexar County, Texas. On January 24, 2010, a retaining wall in the subdivision collapsed and a landslide ensued. Plaintiffs allege that the failure of the retaining wall put their homes in danger of physical damage and diminished the value of their properties.

Plaintiffs filed suit against Defendants Pulte Homes, Inc., Pulte Homes of Texas, L.P. ("Pulte"), and Centex Homes, Inc. ("Centex"), in the 57th Judicial District Court of Bexar County, Texas on January 23, 2012, alleging negligence, negligence per se, gross negligence, private and public nuisance, fraud in a real estate transaction, fraud, violations of the Texas Deceptive Trade Practices Act, breach of contract, and breach of implied warranty. (*See* Def.'s Notice Removal 1, Doc. No. 1; Pls.' Orig. Pet., Doc. No. 1, Ex. A). Defendants Pulte and

Centex are the developers of the subdivision and are wholly owned subsidiaries of Pulte Group, Inc. (formerly known as Pulte Homes, Inc.).[1] Centex removed the action to this Court on February 24, 2012, based on diversity jurisdiction.

On January 19, 2012, Centex filed a separate lawsuit, also in the U.S. District Court for the Western District of Texas, against Arias & Associates, Inc. ("Arias"), and Gravity Walls, Ltd. ("Gravity Walls"), the two companies that Centex hired to design and construct the retaining wall that collapsed.[2] Centex's case against Arias and Gravity Walls was assigned to Judge Garcia and is styled SA-12-CV-53-OLG.

Plaintiffs allege that they had no knowledge, nor should they have known through the exercise of reasonable diligence, that Arias and Gravity Walls were allegedly negligent in the design and construction of the wall until after Centex filed its lawsuit on January 19. (Pls.' Prop. Am. Compl. ¶ 8, Doc. No. 18, Attach. 1). Upon learning that Arias and Gravity Walls were allegedly negligent in the design and construction of the wall, Plaintiffs attempted to assert claims against them in several ways.

First, on March 26, 2012, Plaintiffs moved to intervene in Judge Garcia's case.[3] That same day, Plaintiffs also moved to consolidate this case with Judge Garcia's case, filing motions to consolidate in both actions.[4] Judge Garcia denied Plaintiffs' motions to intervene

---

[1] On June 18, 2012, the Court dismissed Plaintiffs' claims against Pulte Group, Inc., for lack of personal
[2] Centex retained Arias to be the geotechnical engineer for the construction of the Rivermist Subdivision. *See Centex v. Arias & Assocs., Inc.*, No. SA-12-CV-53-OLG, Compl. ¶ 8, Doc. No. 1. Centex subsequently contracted with Gravity Walls to construct the wall that Arias designed. *Id.* ¶ 10.
[3] *See Centex*, No. SA-12-CV-53-OLG, Doc. No. 11.
[4] *See* Doc. No. 12 in *Centex*; Doc. No. 7 in this case.

and consolidate on May 31, 2012.[5] As a result of Judge Garcia's ruling, this Court denied Plaintiffs' motion to consolidate as moot on June 7.

On July 11, 2012, Plaintiffs filed this motion for leave to amend their complaint to add Arias and Gravity Walls as defendants in the lawsuit. (Doc. No. 18). Plaintiffs allege that the amendment is necessary because, since Plaintiffs' motions to consolidate and intervene have been denied, it has become apparent that joinder is required so that all potentially responsible parties can be joined in one lawsuit. (Pls.' Mot. Leave ¶¶ 5-6, Doc. No. 18). Because both Arias and Gravity Walls are citizens of Texas, as are Plaintiffs, their joinder to the lawsuit would destroy diversity. (Pls.' Prop. Am. Comp. ¶¶ 1, 4-5, Doc. No. 18, Attach. 1).

Centex filed a response in opposition to Plaintiffs' motion for leave to amend. Centex argues that Plaintiffs' proposed amendment is futile and that, because the addition of Arias and Gravity Walls would defeat jurisdiction, permitting the amendment would be improper under an analysis of the factors enumerated in *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987). (Doc. No. 20). Although Centex has now been dismissed from the case,[6] the Court will still consider Centex's arguments to the extent that the arguments are relevant to Plaintiffs' claims against Pulte.

---

[5] Judge Garcia adopted the report and recommendations of Magistrate Judge Mathy. Judge Mathy reasoned that the motion to consolidate should be denied because, if consolidated, the risk of prejudice and confusion would be unacceptably high since the two cases raised "predominantly distinct and discrete issues." *Centex*, Report and Recommendation 39, Doc. No. 32). Judge Mathy reasoned that the motion to intervene should be denied because allowing the intervention would destroy diversity jurisdiction, and thus was barred by 28 U.S.C. § 1367(b). *Id.* at 47.

[6] On September 24, the Court granted Centex's motion to compel arbitration and accordingly dismissed Plaintiffs' claims against Centex without prejudice. (Doc. No. 21).

## II. Analysis

Plaintiffs in this case seek leave to amend their complaint by joining two non-diverse defendants, Arias and Gravity Walls. Thus, if the Court allows the amendment, jurisdiction will be defeated.

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject-matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). When confronted with a motion for leave to file an amended pleading, Federal Rule of Civil Procedure 15(a) provides that a court "should freely give leave when justice so requires." The Fifth Circuit has held that, when a proposed amendment will defeat a court's jurisdiction, justice requires that the court closely scrutinize the amendment by considering several factors. Those factors are enumerated in *Hensgens*, 833 F.2d 1179.

### A. The *Hensgens* Factors

When faced with an amended pleading naming a new nondiverse defendant in a case that has been removed based solely on diversity jurisdiction, the district court should scrutinize the amendment more closely than an ordinary amendment. *Hensgens*, 833 F.2d at 1182. The district court must consider a number of factors in order to "balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits." *Id.* Specifically, the court should consider "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Id.* After considering these factors, along with

considering input from the defendant, the district court should then balance the equities and decide whether the amendment should be permitted. *Id.* "[T]he balancing of these competing interests is not served by a rigid distinction of whether the proposed added party is an indispensable or permissive party." *Id.* This Court will consider each factor enumerated in *Hensgens* in turn.

**1. Extent to which the Purpose of the Amendment is to Defeat Federal Jurisdiction**

When considering the first factor, courts take into account "whether the plaintiffs knew or should have known the identity of the non-diverse defendant when the state court complaint was filed." *Gallegos v. Safeco Ins. Co. of Ind.*, Civ. A. No. H-09-2777, 2009 WL 4730570, at *3 (S.D. Tex. Dec. 7, 2009) (quoting *Tomlinson v. Allstate Indem. Co.*, No. Civ. A. 06-0617, 2006 WL 1331541, at *3) (E.D. La. May 12, 2006)). "[A] plaintiff's failure to join a non-diverse defendant to an action prior to removal when such plaintiff knew of a non-diverse defendant's identity and activities suggests that the purpose of the amendment is to destroy diversity jurisdiction." *Lowe v. Singh*, Civ. A. No. H-10-1811, 2010 WL 3359525, at *2 (S.D. Tex. Aug. 23, 2010) (quoting *Schindler v. Charles Schwab & Co. Inc.*, No. Civ. A. 05-0082, 2005 WL 1155862, at *3 (E.D. La. May 12, 2005)). "However, courts have also recognized that when a plaintiff states a valid claim against a defendant, it is unlikely that the *primary* purpose of bringing those defendants into a litigation is to destroy diversity jurisdiction." *Id.* (emphasis in original) (quoting *Schindler*, 2005 WL 1155862, at *3).

Here, the procedural history of the case suggests that Plaintiffs are not motivated solely by an attempt to destroy diversity. Before filing their proposed amended complaint, Plaintiffs actively tried to pursue their claims against Arias and Gravity Walls by filing a motion to

intervene in Centex's lawsuit against them and also by filing motions to consolidate Centex's lawsuit with this case. Plaintiffs' conduct shows that they have consistently been attempting in good faith to bring claims against Arias and Gravity Walls. Had Plaintiffs simply wanted to defeat federal jurisdiction, they likely would have attempted to join Arias and Gravity Walls in this case months ago.

Furthermore, Plaintiffs allege that they had no knowledge, nor should they have known through the exercise of reasonable diligence, that Arias and Gravity Walls were allegedly negligent in the design and construction of the wall until after Centex filed its lawsuit on January 19. (Pls.' Prop. Am. Compl. ¶ 8, Doc. No. 18, Attach. 1). Defendants do not dispute this contention, nor does the Court have any reason to find otherwise. Thus, because Plaintiffs filed their petition in state court just four days after Centex filed its lawsuit against Arias and Gravity Walls in federal court, it is unlikely that Plaintiffs had become aware that Arias and Gravity Walls were involved in the design and construction of the retaining wall before Plaintiffs filed their state court petition.

Accordingly, the first *Hensgens* factor weighs in favor of allowing Plaintiffs' amended complaint.

**2. Whether Plaintiffs have Been Dilatory in Seeking Amendment**

"In analyzing whether a plaintiff has been dilatory in seeking an amendment, district courts often look to the amount of time that has passed between the filing of the original complaint and the amendment and the amount of time between the removal and the amendment." *Schindler*, 2005 WL 1155862, at *4 (citation omitted). "Courts also look to the stage of the proceedings." *Lowe*, 2010 WL 3359525, at *2 (citation omitted). Factors tending

to show that a plaintiff has not been dilatory include instances where the plaintiff seeks amendment before a scheduling order has been issued, before trial or pretrial dates have been scheduled, or before discovery between the parties has commenced. *Martinez v. Holzknecht*, 701 F. Supp. 2d 886, 891 (S.D. Tex. 2010) (citations omitted).  However, a plaintiff may nonetheless be found not to have been diligent if the plaintiff could have easily named the nondiverse defendant in the state court lawsuit. *Id.* (citing *O'Connor v. Automobile Ins. Co. of Hartford*, 846 F. Supp. 39, 41 (E.D. Tex. 1994)). Generally, district courts in the Fifth Circuit have found plaintiffs to be dilatory when the proposed amendment is not filed within two months after the filing of the original complaint or within thirty days after the notice of removal. *See Multi-Shot, LLC v. B & T Rentals, Inc.*, Civ. A. No. H-09-3283, 2010 WL 376373, at *9 (S.D. Tex. Jan. 26, 2010) (citing *Irigoyen v. State Farm Lloyds*, No. CA-C-03-324-H, 2004 WL 398553, at *4 (S.D. Tex. Jan. 5, 2004)). Some courts, however, have been more lenient, finding that plaintiffs have not been dilatory when filing a proposed amendment up to five months after filing the state court complaint, so long as the proposed amendment is not filed outside of applicable deadlines. *See, e.g.*, *McNeel v. Kemper Cas. Ins. Co.*, No. Civ. A. 3:04-CV-0734, 2004 WL 1635757, at *3 (N.D. Tex. July 21, 2004) (finding that the plaintiff was not dilatory when she filed her proposed amendment less than five months after the state court complaint, six weeks after removal, and within the deadline for joining parties in the case); *Vincent v. E. Haven Ltd. P'ship*, No. Civ. A. 02-294, 2002 WL 31654955, at *3 (E.D. La. Nov. 20, 2002) (finding that the plaintiff was not dilatory when the proposed amendment was filed five months after the case was filed and before a scheduling order or deadline for filing amendments had been established).

Plaintiffs filed this motion for leave to amend the complaint on July 11, 2012, nearly six months after they originally filed their suit against Defendants in state court, and nearly five months after the case was removed.[7] While other factors must be considered in this case besides merely the time that elapsed between removal and the motion for leave to amend, such as the fact that Plaintiffs pursued their claims against Arias and Gravity Walls by filing motions to intervene and consolidate, the Court still finds that Plaintiffs could have been much more diligent in pursuing their amended complaint. For example, Plaintiffs could have filed their proposed amended complaint alongside their motions to consolidate and intervene. Alternatively, Plaintiffs could have been prepared to immediately file their proposed amended complaint upon learning that their motions to consolidate and intervene had been denied. Instead, after learning that their motions to intervene and consolidate had been unsuccessful, Plaintiffs waited over a month to file their proposed amendment, at which point a scheduling order had already been in place in this case for nearly a month.[8] Since district courts have found delays of thirty days to be dilatory in newly removed cases, a delay of over thirty days is especially telling here since litigation has already progressed for over eight months. Accordingly, the Court finds that Plaintiffs have not been diligent in filing their proposed amendment. Thus, the second *Hensgens* factor weighs in favor of denying the proposed amendment.

---

[7] Plaintiffs' filed their petition in state court on January 23, 2012, and the case was removed on February 24, 2012.

[8] A scheduling order was issued in this case on June 13, 2012. (Doc. No. 14). While Plaintiffs filed this motion for leave to amend within the scheduling order's deadline for filing motions for leave to amend pleadings, such timeliness is not sufficient to constitute diligent behavior in this context.

### 3. Whether Plaintiffs will be Significantly Injured if Amendment is Not Allowed

District courts have recognized that forcing a plaintiff to maintain parallel lawsuits arising out of the same facts in two different courts wastes judicial resources, may lead to inconsistent results, and may impose a prejudicial financial burden on a plaintiff. *Schindler*, 2005 WL 1155862, at *4 (citations omitted). However, the fact that a plaintiff would have to incur the additional expense of parallel proceedings, by itself, does not constitute significant prejudice. *Martinez*, 701 F. Supp. 2d at 892. In evaluating whether a plaintiff will be significantly injured if an amendment is not allowed, the Fifth Circuit has held that a district court may consider whether the proposed amendment would be futile. *Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 368 (5th Cir. 2010). "As a plaintiff will not be 'significantly injured' by the denial of a clearly meritless claim, it is within the district court's discretion to deny the amendment as futile if there is no reasonable basis to predict that the plaintiff will be able to recover against the non-diverse, non-indispensable party sought to be added as a defendant." *Id.*

Here, if the Court denies Plaintiffs' motion for leave to amend, Plaintiffs will be forced to litigate in not just two different forums, but three. The Court has already granted Centex's motion to compel arbitration. Thus, if Plaintiffs cannot join Arias and Gravity Walls to this lawsuit, Plaintiffs will have to pursue their claims against them in yet another forum and incur additional litigation expenses. However, the additional expense of maintaining a separate lawsuit cannot be the Court's only consideration when determining whether Plaintiffs will be significantly injured if amendment is not allowed. The Court must also take into account whether Plaintiffs' claims have merit.

Centex contends that Plaintiffs' proposed amendment is futile. Specifically, Centex contends that most of Plaintiffs' causes of action are time-barred by a two-year limitations period, which Centex contends began to run when the wall collapsed on January 24, 2010, and expired on January 24, 2012, before Plaintiffs filed their amended complaint. While Centex concedes that Plaintiffs' claims for fraud are subject to a four-year limitations period, Centex nonetheless argues that Plaintiffs have not pled facts sufficient to support claims for fraud against Arias and Gravity Walls. (Resp. 3, Doc. No. 20). To determine whether Plaintiffs' claims against Arias and Gravity Walls can plausibly succeed, the Court will consider each of Plaintiffs' alleged causes of action against them.[9]

*a. Plaintiffs' Claims for Negligence, Negligence Per Se, Gross Negligence, Private Nuisance, and Public Nuisance*

In Texas, the statute of limitations period for tort claims involving damage to personal property is two years. TEX. CIV. PRAC. & REM. CODE § 16.003(a). The limitations period for nuisance claims is two years as well. *Schneider v. Nat. Carriers, Inc. v. Bates*, 147 S.W.3d 264, 270 (Tex. 2004) (citing § 16.003). For both causes of action, the statute of limitations begins to run when the cause of action accrues. § 16.003(a). "In most cases, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003).

Here, the legal injuries alleged are the diminished values of Plaintiffs' homes and properties, the loss of use and enjoyment of their properties, and mental anguish. (Pls.' Prop.

---

[9] Centex has not provided any statutory or common law authority in support of its contention that Plaintiffs' claims are time-barred by a two-year limitations period. Nor have Plaintiffs provided authority demonstrating that the applicable limitations periods are longer than two years.

Am. Compl. ¶ 25, Doc. No. 18, Attach. 1). All of these injuries were caused by the collapse of the retaining wall. Accordingly, the limitations period began to run when the wall collapsed on January 24, 2010. Because Plaintiffs did not file their amended complaint until July 11, 2012, more than two years after the collapse, all of Plaintiffs' negligence and nuisance claims against Arias and Gravity Walls will be time-barred unless an exception applies to toll the statute of limitations.[10]

The Texas Supreme Court has recognized two doctrines that may apply to toll the statute of limitations. *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 65 (Tex. 2011). The first is the discovery rule, which tolls the running of limitations "until the *injury* could reasonably have been discovered." *Id.* (emphasis added). The discovery rule only applies if the type of injury is "inherently undiscoverable," and the "legal question of whether an injury is inherently undiscoverable is determined on a categorical basis." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 930 (Tex. 2011). Here, there is no question that the collapse of the massive retaining wall was immediately discoverable, as was the alleged damage to Plaintiffs' properties. Thus, limitations began running immediately when the wall collapsed. It makes no

---

[10] The applicable filing date here is the date on which Plaintiffs filed their proposed amended complaint adding Arias and Gravity Walls as defendants. The date Plaintiffs filed their original petition is irrelevant because neither federal nor Texas law permit Plaintiffs' proposed addition of Arias and Gravity Walls to relate back to the original filing date. "Under federal law, adding a new defendant generally does not relate back to the filing of the original complaint unless Federal Rule of Civil Procedure 15(c)(3) [now codified as Rule 15(c)(1)(C)] applies." *Braud v. Transp. Serv. Co. of Ill.*, 455 F.3d 801, 806 (5th Cir. 2006). Rule 15(c)(1)(C) only applies "to the changing or substitution of defendants, not to the addition of new defendants without any substitution of the old ones." *Id.* at 806 n.12 (referring to former Rule 15(c)(3), which has been recodified to its present form without any substantive changes). Likewise, under Texas law, misnomer and misidentification are exceptions to the general rule that "an amended pleading adding a new party does not relate back to the original pleading." *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 400 (Tex. 2011). Here, Plaintiffs are attempting to add two new defendants without substituting an original defendant, so Plaintiffs' claims against Arias and Gravity Walls do not relate back to the original complaint.

difference that Plaintiffs might have not discovered who was responsible within the two-year period; rather, limitations began to run when they discovered the injury.

The second doctrine that can toll limitations under Texas law is fraudulent concealment. Fraudulent concealment can toll limitations if the defendant "actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff." *BP Am. Prod. Co.*, 342 S.W.3d at 67 (citation omitted). Fraudulent concealment tolls the running of limitations until "the fraud is discovered or could have been discovered with reasonable diligence." *Id.* Like the discovery rule, the focus of the fraudulent concealment doctrine is the date on which a plaintiff became aware that he had been wronged, not the date on which a plaintiff became aware of the wrongdoer's identity. Plaintiffs were all put on notice that they had been wronged when the wall collapsed and damaged their properties. Thus, fraudulent concealment will not toll the accrual of limitations.

Thus, because the Court is aware of no tolling doctrine that applies in this case, Plaintiffs' negligence, gross negligence, negligence per se, private nuisance, and public nuisance claims against Arias and Gravity Walls will likely be barred by the two-year statute of limitations.[11]

   b. *Plaintiffs' Claims for Alleged Violations of the Texas Deceptive Trade Practices Act*

---

[11] Some Texas appellate courts have also recognized a third tolling doctrine, which they refer to as "equitable tolling." "Equitable tolling applies in situations where a claimant actively pursued his judicial remedies but filed a defective pleading during the statutory period, or where a complainant was induced or tricked by his adversary's misconduct into allowing filing deadlines to pass." *Bailey v. Gardner*, 154 S.W.3d 917, 920 (Tex.App.-Dallas 2005, no pet.). A defective pleading includes a pleading in which the wrong defendant was sued and the proper defendant was not named until after the limitations period expired. *Id.* (citation omitted). Plaintiffs in this case do not allege that they were tricked. Nor do they allege that they filed suit against the wrong defendant. Even if the Court were to find that equitable tolling could possibly apply to toll limitations while Plaintiffs' motions to intervene and consolidate were pending, Plaintiffs' claims would still be time-barred because Plaintiffs filed their motions to intervene and consolidate on March 26, 2012, several months after the limitations period had run.

A claim under the Deceptive Trade Practices Act (DTPA) is also subject to a two-year limitations period. *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999). By statute, a DTPA claim "must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." TEX. BUS. & COM. CODE § 17.565. Like with negligence and nuisance, the accrual date depends on the date a plaintiff became aware of the deceptive act itself rather than the actor's identity. Therefore, because the wall collapse put Plaintiffs on notice that a deceptive act may have occurred, the statute of limitations began to run on January 24, 2010. The two-year limitations period therefore expired on January 24, 2012.[12]

   c. *Plaintiffs' Claims for Breach of Contract and Implied Warranty*

Plaintiffs do not allege that they entered into a contract with Arias and Gravity Walls, and therefore they cannot assert a breach-of-contract claim against them. (*See* Pls.' Prop. Am. Comp. ¶ 21, Doc. No. 18, Attach. 1). However, Plaintiffs do apparently bring a claim for breach of implied warranty against Arias and Gravity Walls. (*Id.* ¶ 22). Under Texas law, a claim for breach of an implied warranty can be construed as either a claim in tort or in contract. *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 704 (Tex. 2008). Plaintiffs' claims against Arias and Gravity Walls would fail either way. If contractual in nature, their claims

---

[12] Moreover, all of Plaintiffs' claims against Arias and Gravity Walls under the DTPA rely on alleged misrepresentations, failures to disclose, and unconscionable performance of a contract. (Pls.' Prop. Am. Compl. ¶ 20, Doc. No. 18, Attach. 1). Since Plaintiffs allege that they did not even know about Arias and Gravity Walls, let alone conduct business with them, before learning of Centex's lawsuit, Plaintiffs' claims under the DTPA against Arias and Gravity Walls would likely fail.

would fail because the parties did not enter into a contract together. If tortious, the claims would fail because the two-year statute of limitations has run, as discussed *supra*.

### d. Plaintiffs' Claims for Fraud

Plaintiffs allege fraud against Arias and Gravity Walls. (Pls.' Prop. Am. Compl. ¶¶ 18-19, Doc. No. 18, Attach. 1).[13] Under Texas law, the elements of fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). Plaintiffs do not allege that Arias and Gravity Walls ever made a material representation to them. On the contrary, Plaintiffs allege that they had no knowledge that Arias and Gravity Walls were even involved with the design and construction of the retaining wall until after Centex filed its lawsuit. Therefore, Plaintiffs have not alleged facts sufficient to support a fraud claim against Arias and Gravity Walls.

Thus, after careful consideration of each of Plaintiffs' claims against Arias and Gravity Walls, the Court finds that there is no reasonable basis to predict that Plaintiffs will be able to recover against them.[14] Accordingly, despite the additional expenses Plaintiffs might incur by pursuing litigation in another forum, the Court finds that Plaintiffs would not be significantly

---

[13] Plaintiffs do not allege fraud in a real estate transaction against Arias and Gravity Walls; Plaintiffs only allege fraud in a real estate transaction against Centex. (*See* Pls.' Prop. Am. Compl. ¶¶ 15-17, Doc. No. 18, Attach. 1).

[14] To be sure, the Court does not find that Plaintiffs' claims will undoubtedly fail. Rather, the Court finds that there appears to be a substantial likelihood that the claims will not be successful and, therefore, that Plaintiffs will not be prejudiced if their motion for leave to file an amended complaint is denied. *See Martinez*, 701 F. Supp. 2d at 892 (holding that while the court did not decide the merits of the limitations defense, the existence of a possible limitations defense mitigated the prejudice that might occur from a denial of joinder). If desired, Plaintiffs may still pursue their claims against Arias and Gravity Walls in state court.

prejudiced if the Court denies their motion for leave to amend. Accordingly, the third *Hensgens* factor weighs against permitting the proposed amended complaint.

**4. Other Factors Bearing on the Equities**

Neither party points to any other factors bearing on the equities in this case. However, the Court identifies one additional factor that should be considered here.

In *Hensgens*, the Fifth Circuit directed courts to balance the danger of parallel proceedings with the defendant's "interest in retaining the federal forum." *Hensgens*, 833 F.2d at 1182. Here, the Court finds that Pulte's interest in maintaining the federal forum is especially strong because litigation has already progressed for over eight months, and Pulte has had a motion for summary judgment pending for over six months.[15] If the case were remanded, Pulte would be faced with additional delays. The potential for additional delays in resolving Pulte's motion, while certainly not dispositive by itself, is nonetheless one additional factor that weighs in favor of denying Plaintiffs' proposed amendment.

### III. Conclusion

After considering the relevant factors, the Court finds that Pulte's interest in maintaining the federal forum outweighs Plaintiffs' interest in not having parallel lawsuits.

Accordingly, Plaintiffs' motion for leave to file their first amended complaint (Doc. No. 18) is DENIED.

SIGNED this 9th day of October, 2012.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[15] Pulte filed its motion for summary judgment on March 20, 2012. (Doc. No. 4).